DANIEL M. HAWKE
Email: HawkeD@sec.gov
ELAINE C. GREENBERG
Email: GreenbergE@sec.gov
G. JEFFREY BOUJOUKOS
Email: BoujoukosJ@sec.gov
MICHAEL J. RINALDI
Email: RinaldiM@sec.gov
COLLEEN K. LYNCH
Email: LynchCK@sec.gov
DAVID W. SNYDER
Email: SnyderD@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
701 Market Street, Suite 2000
Philadelphia, Pennsylvania 19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

LOCAL COUNSEL:
David S. Brown, Cal. Bar No. 134569
Email: BrownDAV@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036

Attorneys for Plaintiff
Securities and Exchange Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. SACV11 - 1168 DOC (ANx) |
| Plaintiff, |  |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DOUGLAS V. DECINCES, JOSEPH J. DONOHUE, FRED SCOTT JACKSON, and ROGER A. WITTENBACH, |  |
| Defendants. |  |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

**SUMMARY OF THE ACTION**

1.     This case involves unlawful insider trading by Douglas V. DeCinces ("DeCinces"), Joseph J. Donohue ("Donohue"), Fred Scott Jackson ("Jackson"), and Roger A. Wittenbach ("Wittenbach") (collectively, the "Defendants") in advance of the January 12, 2009 public announcement that Abbott Laboratories, Inc. ("Abbott") agreed to acquire the outstanding shares of Advanced Medical Optics, Inc. (hereinafter referred to by its former New York Stock Exchange ticker symbol, "EYE") through a tender offer (the "EYE/Abbott Transaction").

2.     DeCinces received material, nonpublic information about the impending EYE/Abbott Transaction from an individual directly involved with the EYE/Abbott Transaction. This individual (the "Source") had access to material, nonpublic information regarding the impending EYE/Abbott Transaction and was aware that that information should be kept confidential.

3.     In the weeks preceding the public announcement, DeCinces bought at least 83,700 shares of EYE in several brokerage accounts he controlled, including accounts in his grandchildren's names, on the basis of the material, nonpublic information regarding the impending EYE/Abbott Transaction he received from the Source. DeCinces used the material, nonpublic information in breach of a fiduciary duty or other duty of trust and confidence.

4.     On January 12, 2009, EYE publicly announced that it had entered into an agreement with Abbott pursuant to which Abbott planned to acquire EYE for $22 per share through a tender offer. The day of the public announcement, EYE's stock price closed at $21.50 per share, which was an increase of $12.65 per share, approximately 143% over the prior trading day's closing price.

5.     Following the public announcement, DeCinces sold the 83,700 EYE shares for a profit of $1,282,691.

6.     In addition, DeCinces tipped material, nonpublic information that he received regarding the impending EYE/Abbott Transaction to Donohue, Jackson,

1    and Wittenbach.  After receiving the material, nonpublic information from

2    DeCinces, each traded EYE stock on the basis of the information that he received.

3          7.      Specifically, Donohue bought 5,000 shares of EYE stock on the basis of

4    DeCinces' tip before the public announcement.  Donohue sold following the public

5    announcement of the EYE/Abbott Transaction and profited by $75,570.

6          8.      Jackson bought 11,000 shares of EYE stock on the basis of DeCinces'

7    tip before the public announcement.  He sold following the public announcement of

8    the EYE/Abbott Transaction and profited by $140,259.

9          9.      Finally, Wittenbach bought 15,000 shares of EYE stock on the basis of

10   DeCinces' tip before the public announcement.  Wittenbach sold after the public

11   announcement of the EYE/Abbott Transaction and profited by $201,692.

12   Wittenbach also directed his sister to purchase EYE stock on the basis of the

13   information he received from DeCinces.  On the basis of his recommendation, she

14   bought 1,000 shares of EYE stock before the public announcement, sold her shares

15   after the public announcement, and profited by $13,214.

16         10.    Donohue, Jackson, and Wittenbach all used the material, nonpublic

17   information in breach of fiduciary duties or other duties of trust and confidence.

18         11.    Collectively, DeCinces, Donohue, Jackson, and Wittenbach made

19   $1,713,426 in illicit profits (including the profits from the trades Wittenbach directed

20   in his sister's account).

21         12.    By knowingly or recklessly engaging in the conduct described in this

22   Complaint, DeCinces, Donohue, Jackson, and Wittenbach violated and, unless

23   enjoined, will continue to violate Section 10(b) of the Securities Exchange Act of

24   1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

25   § 240.10b-5] and Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule

26   14e-3 thereunder [17 C.F.R. § 240.14e-3].

27

28

## JURISDICTION AND VENUE

13.    The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1] to enjoin such acts, practices, and courses of business and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as the Court may deem just and appropriate.

14.    The Court has jurisdiction over this action pursuant to Sections 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1, and 78aa].

15.    Venue in this district is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Central District of California.

## DEFENDANTS

16.    **Douglas V. DeCinces**, age 60, currently resides in Laguna Beach, California. DeCinces was a Major League Baseball player from 1973 to 1987. Currently, DeCinces is the President and Chief Executive Officer of a real estate development firm in Irvine, California.

17.    **Joseph J. Donohue**, age 49, currently resides in Trabuco Canyon, California. Donohue is a physical therapist licensed in the State of California and is the owner of a physical therapy practice located in Newport Beach, California. From at least August 2004 through January 2009, DeCinces was one of Donohue's patients.

18.    **Fred Scott Jackson,** age 65, currently resides in Newport Beach, California. Jackson is a real estate lawyer who has been licensed to practice law in the State of California since 1972. Jackson is a founding member and shareholder of a California law firm.

19.    **Roger A. Wittenbach**, age 69, currently resides in Lutherville-Timonium, Maryland.  Wittenbach is the President and Chief Executive Officer of a privately-held company headquartered in Sparks, Maryland.

**RELATED ENTITY**

20.    **Advanced Medical Optics, Inc.** (or "EYE") was a manufacturer of medical products for the eye that was headquartered in Santa Ana, California.  It now operates as a subsidiary of Abbott called Abbott Medical Optics, Inc.  Before the January 12, 2009 public announcement that Abbott would acquire EYE through a tender offer, EYE traded on the New York Stock Exchange under the ticker symbol "EYE."

**FACTS**

A.    **The Source Possessed Material, Nonpublic Information Regarding
the EYE/Abbott Transaction**

21.    The Source was directly involved in the impending EYE/Abbott Transaction from its inception in October 2008.  The Source knew or was reckless in not knowing that EYE's Code of Ethics and its incorporated policy regarding "Insider Trading and Confidentiality Obligations" clearly set forth that the Source had a duty not to disclose confidential information, or "inside information," to anyone outside the company.  Indeed, EYE's Code of Ethics specifically identified "mergers, acquisitions, tender offers, joint ventures, or significant changes in assets" and "changes in control or in management of the Company" as examples of what it considered to be "inside information."

22.    The Source, as an employee of EYE, received the policies described above, knew that he was required to abide by the policies and procedures, and agreed to do so.  The Source also knew that he had a duty to the shareholders of EYE not to discuss or to disclose information about the impending EYE/Abbott Transaction.

**B.**   **DeCinces Bought Shares of EYE on the Basis of Material, Nonpublic**
**Information Communicated to Him by the Source**

23.   During the week of October 13, 2008, an investment bank, at EYE's request, contacted Abbott to see if it was interested in an acquisition or strategic transaction with EYE.  Abbott expressed an interest in a strategic transaction with EYE, and representatives of the companies met on October 22, 2008, to discuss the possibility of a merger between the two companies.

24.   On October 24, 2008, EYE and Abbott executed a nondisclosure agreement, which allowed Abbott to conduct its due diligence, and, on October 26, 2008, EYE executives met with Abbott to discuss, among other things, EYE's business and Abbott's level of interest in acquiring EYE.

25.   On November 14, 2008, representatives of EYE met with Abbott to discuss EYE's business, historical financial results, and business strategy in greater detail.  On November 26, 2008, Abbott informed parties at EYE that Abbott intended to forward a tender offer proposal in the next few days.

26.   With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

27.   On December 1, 2008, DeCinces bought 3,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.

28.   On December 1, 2008, Abbott sent representatives of EYE a nonbinding, preliminary proposal in which Abbott offered to buy EYE's outstanding shares of common stock through a tender offer for the cash price range of $21 to $23 per share.

29.   On December 2, 2008, members of EYE's management team and EYE's Board of Directors met telephonically to discuss the proposal.  At that

meeting, the Board authorized management to engage in a limited period of exclusive negotiations with Abbott.

30.    With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

31.    On December 2, 2008, DeCinces bought 5,000 additional shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.

32.    Abbott's due diligence of EYE began on or about December 8, 2008.

33.    With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

34.    On December 10, 2008, DeCinces placed a limit order for an additional 4,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.  This limit order was executed on December 12, 2008.

35.    On December 12, 2008, EYE's and Abbott's respective representatives exchanged drafts of the merger agreement and related documentation.

36.    With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

37.    On December 15, 2008, DeCinces bought an additional 14,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.  This purchase was funded by approximately $160,000 that was generated by DeCinces' liquidation of a diverse portfolio of 110 stocks (including some positions held since 2001).

38.    On December 15 and 16, 2008, EYE executives and EYE's legal and financial advisors met with Abbott and its legal and financial advisors.  During this

two-day meeting, EYE's representatives presented Abbott with overviews of EYE's business, historical financial results, business strategy, legal matters, and financial projections.

39.    With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

40.    On December 17, 2008, DeCinces bought an additional 10,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.  Also on December 17, 2008, he bought an additional 8,000 EYE shares (through accounts that he had set up for his grandchildren) on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.

41.    The next day, December 18, 2008, DeCinces bought an additional 3,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.

42.    As of December 17 and 18, 2008, EYE's Board planned to vote on the merger on Monday, January 5, 2009, and to announce the merger on Wednesday, January 7, 2009.

43.    On December 19, 2008, members of EYE management met with the EYE Board of Directors, along with EYE's legal and financial advisors, and advised the Board that Abbott was still targeting an early January 2009 decision.

44.    On December 21, 2008, Abbott called representatives of EYE and confirmed that, after completion of Abbott's preliminary legal and financial due diligence review of EYE, the proposed purchase price remained in the range of $21 to $23 per share.

45.     On December 28, 2008, representatives of EYE received a call from Abbott confirming that it would be willing to propose a purchase price of $21 per share.

46.     During this same time period, the EYE/Abbott Transaction progressed and several key events occurred.  Among other things, on Wednesday, December 31, 2008, the EYE Board of Directors meeting was moved from Monday, January 5, 2009, to Thursday, January 8, 2009.

47.     With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

48.     On January 2, 2009, DeCinces bought an additional 12,500 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.  Shortly thereafter, DeCinces bought an additional 1,200 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by the Source.

49.     On January 4, 2009, certain members of EYE's management had reached a verbal agreement with Abbott as to the terms of their future employment with the company.

50.     With knowledge of the aforementioned material, nonpublic information, the Source provided DeCinces with material, nonpublic information regarding the impending EYE/Abbott Transaction.

51.     Early the next morning, January 5, 2009, DeCinces bought an additional 23,000 shares of EYE:  8,000 shares of EYE in accounts set up for his grandchildren and 15,000 shares in a personal brokerage account.  These purchases were made on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to DeCinces by the Source.  To pay for the shares he bought in his grandchildren's accounts, DeCinces transferred $60,000 from a

1  personal brokerage account to his four grandchildren's brokerage accounts, dividing

2  the $60,000 equally among them.

3  **C.    The January 12, 2009 Public Announcement**

4    52.    At 5:01 a.m. Pacific time on January 12, 2009, EYE announced that it

5  had entered into an agreement with Abbott pursuant to which Abbott planned to

6  acquire EYE through a tender offer of $22 per share in an all cash offer.  EYE's

7  stock price closed at $21.50 per share, an increase of $12.65 per share, or

8  approximately 143%, over the prior trading day's closing price of $8.85 per share.

9    53.    On the day of the announcement, DeCinces sold all of his EYE shares.

10  DeCinces made illegal profits of approximately $1,282,691.

11  **D.    DeCinces Tipped Material, Nonpublic Information About the
        EYE/Abbott Transaction to at Least Three Individuals**

12

13    54.    DeCinces tipped the material, nonpublic information about the

14  EYE/Abbott Transaction he received to at least three individuals:  Donohue,

15  Jackson, and Wittenbach, all of whom traded on the basis of that information.

16    **(1)    Donohue Bought EYE on the Basis of Material, Nonpublic
             Information Tipped by DeCinces**

17

18    55.    Donohue was DeCinces' physical therapist from at least August 2004

19  through January 2009.  Donohue previously had a business relationship with

20  members of the DeCinces family in a venture that ultimately failed.

21    56.    On the basis of the material, nonpublic information regarding the

22  impending EYE/Abbott Transaction that Donohue received from DeCinces,

23  Donohue bought 3,000 shares of EYE on December 9, 2008.

24    57.    On January 7, 2009, Donohue bought an additional 2,000 shares of EYE

25  on the basis of material, nonpublic information regarding the impending EYE/Abbott

26  Transaction communicated to him by DeCinces.

27    58.    On January 12, 2009, Donohue sold all 5,000 shares of EYE for a profit

28  of $75,570.

59.    Later, DeCinces asked Donohue whether he had sold his EYE stock and congratulated him.

**(2)    <u>Jackson Bought EYE on the Basis of Material, Nonpublic Information</u>**

60.    On January 8, 2009, DeCinces and Jackson met for a breakfast meeting to discuss, among other things, a shared business transaction.  During that meeting, Jackson used his mobile handheld device to buy 8,500 shares of EYE based on material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by DeCinces.

61.    DeCinces and Jackson had a social relationship.

62.    Later that day, Jackson bought an additional 1,700 shares of EYE based on material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by DeCinces.

63.    On January 9, 2009, Jackson bought an additional 800 shares of EYE based on material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by DeCinces.

64.    Following the public announcement of the EYE/Abbott Transaction, Jackson sold all 11,000 shares of EYE for a profit of $140,259.

**(3)    <u>Wittenbach Bought EYE on the Basis of Material, Nonpublic Information</u>**

65.    Wittenbach and DeCinces became friends when DeCinces was living in Maryland.  Since that time, Wittenbach and DeCinces have remained close friends.

66.    On January 8, 2009, Wittenbach bought 15,000 shares of EYE on the basis of material, nonpublic information regarding the impending EYE/Abbott Transaction communicated to him by DeCinces.

67.    Also on January 8, 2009, Wittenbach called his sister and recommended that she buy 1,000 shares of EYE stock.  Later that day, on the basis of her brother's recommendation, Wittenbach's sister bought 1,000 shares of EYE on margin.

68.     On the day of the public announcement of the EYE/Abbott Transaction, Wittenbach sold all 15,000 shares of EYE for a profit of $201,692. That same day, Wittenbach called his sister and told her she should sell her EYE stock. Thereafter, she sold 1,000 shares of EYE for a profit of $13,214.

**E.      DeCinces, Donohue, Jackson, and Wittenbach Breached Their Fiduciary or Other Duties When They Traded on the Basis of Material, Nonpublic Information**

69.     The confidential information that DeCinces received regarding the impending EYE/Abbott Transaction was material and nonpublic. For the foregoing reasons, a reasonable investor would have viewed this as being important to his investment decision or a significant alteration of the total mix of information available to the public.

70.     EYE and its employees assumed and owed a duty to its shareholders to maintain the confidentiality of information related to the impending EYE/Abbott Transaction. Insiders at EYE knew or were reckless in not knowing that the information about the EYE/Abbott Transaction learned in the course of their employment was material and nonpublic and disclosed to them with the expectation that they owed, and would abide by, a fiduciary or other similar duty of trust and confidence. Insiders at EYE owed a duty to maintain the confidence of any nonpublic information about the EYE/Abbott Transaction and to abstain from disclosing that information to others.

71.     DeCinces knew that the Source, due to his employment and position at EYE, had access to material, nonpublic information and was under a duty to keep it confidential. When he traded on the material, nonpublic information received from the Source, DeCinces knew or was reckless in not knowing that he was in breach of a direct or derivative duty to keep the material, nonpublic information confidential.

72.     DeCinces' tippees, Donohue, Jackson, and Wittenbach, each of whom knowingly or recklessly received material, nonpublic information from DeCinces

1   about the impending tender offer, had a duty to maintain that information in

2   confidence.  By trading on the information that they received from DeCinces,

3   Donohue, Jackson, and Wittenbach breached a duty.

4       73.    The Source derived or intended to derive a direct or indirect benefit

5   from disclosing the material, nonpublic information regarding the EYE/Abbott

6   transaction to DeCinces.

7       74.    DeCinces tipped the material, nonpublic information that he received

8   about the impending EYE/Abbott Transaction to Donohue, Jackson, and Wittenbach,

9   intending it to be gifts to them or to otherwise benefit himself.

10      75.    Significantly, even in the absence of fiduciary or other duties,

11  DeCinces, Donohue, Jackson, and Wittenbach all had a duty to abstain from, and

12  were prohibited from, trading given that substantial steps had been taken to

13  commence Abbott's tender offer to EYE's shareholders and given that they all knew

14  or had reason to know that the confidential information they received came from an

15  individual closely associated with EYE, the target of the tender offer.  When

16  DeCinces received this confidential information about the impending EYE/Abbott

17  Transaction and then DeCinces communicated that information to Donohue,

18  Jackson, and Wittenbach, it was reasonably foreseeable that this communication

19  would result in unlawful trading.

20                    **FIRST CLAIM FOR RELIEF**

21  **Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

22                    **(Against All Defendants)**

23      76.    The Commission re-alleges and incorporates by reference each and

24  every allegation in paragraphs 1 through 75, inclusive, as if they were fully set forth

25  herein.

26      77.    The information concerning the EYE/Abbott Transaction was material

27  and nonpublic.  In addition, the information was considered confidential by EYE.

28

78.    At all times relevant to the Complaint, Defendants acted knowingly or recklessly.

79.    Defendants learned material, nonpublic information regarding the EYE/Abbott Transaction and knew, recklessly disregarded, or should have known that they, directly, indirectly, and/or derivatively, owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

80.    By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a.    employed devices, schemes or artifices to defraud;

    b.    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

81.    By engaging in the foregoing conduct, Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.§ 240.10b-5].

## SECOND CLAIM FOR RELIEF

## Violations of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder

## (Against All Defendants)

82.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 81, inclusive, as if they were fully set forth herein.

83.     DeCinces received material, nonpublic information regarding Abbott's tender offer for the securities of EYE.  DeCinces communicated this material, nonpublic information regarding Abbott's tender offer for the securities of EYE to Donohue, Jackson, and Wittenbach and traded on it himself.

84.     The communications regarding the impending EYE/Abbott Transaction between the Source and DeCinces and then between DeCinces and Donohue, Jackson, and Wittenbach, respectively, occurred under circumstances in which it was reasonably foreseeable that unlawful trading would result.

85.     By December 2009, the time period during which the first trades alleged herein occurred, substantial steps had been taken to commence a tender offer for the securities of EYE by Abbott, including, among other things:  (1) senior members of EYE and Abbott met in person to discuss the possibility of a merger between the two companies; (2) EYE and Abbott entered a nondisclosure agreement on October 24, 2008; (3) Abbott submitted a nonbinding, preliminary proposal to acquire EYE's outstanding shares for between $21 and $23 per share; (4) Abbott conducted due diligence on EYE; and (5) the EYE board held a meeting on January 5, 2009, to evaluate the proposed transaction with Abbott.

86.     DeCinces knew, or had reason to know, that the material, nonpublic information he received, directly or indirectly, about the impending tender offer was material and nonpublic and that he was prohibited from causing the purchase or sale of the security to be sought by the tender offer.  By tipping Donohue, Jackson, and Wittenbach, it was reasonably foreseeable that they would improperly trade in EYE in advance of the tender offer.

87.     DeCinces, Donohue, Jackson, and Wittenbach, knew or had reason to know that the confidential information that each of them received had been acquired, directly or indirectly, from EYE, the target of the tender offer, and therefore they were prohibited from trading in the securities of EYE.

88.     By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter Final Judgments:

### **I.**

Permanently restraining and enjoining Defendants from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and from engaging in conduct in violation of Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3];

### **II.**

Ordering Defendants to disgorge the unlawful trading profits derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### **III.**

Ordering Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**IV.**

Granting such other and further relief as this Court may deem just, equitable, and necessary.

Respectfully submitted,

Dated:  August 4, 2011.

Daniel M. Hawke
Elaine C. Greenberg
G. Jeffrey Boujoukos
Michael J. Rinaldi
     (pro hac vice application to be filed)
Colleen K. Lynch
David W. Snyder

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION

David S. Brown, Designated Local Counsel
SECURITIES AND EXCHANGE
COMMISSION

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Securities and Exchange Commission | Douglas V. DeCinces, Joseph J. Donohue, Fred Scott Jackson, and Roger A. Wittenbach<br><br>Orange County |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>David S. Brown, Esq., Securities and Exchange Commission, 5670 Wilshire Blvd., 11th Floor, Los Angeles, Cal., 90036, (323) 965-3998 | Attorneys (If Known)<br><br>(see attachment) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. §§ 78j(b), 78n(e); insider trading

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**SACV11 - 1168 DOC (ANx)**

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
  ☑   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
  ☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County (defendants Douglas V. DeCinces, Joseph J. Donohue, and Fred Scott Jackson). | State of Maryland (defendant Roger A. Wittenbach). |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | State of Maryland |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date August 4, 2011

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

1   DANIEL M. HAWKE
    Email: HawkeD@sec.gov
2   ELAINE C. GREENBERG
    Email: GreenbergE@sec.gov
3   G. JEFFREY BOUJOUKOS
    Email: BoujoukosJ@sec.gov
4   MICHAEL J. RINALDI
    Email: RinaldiM@sec.gov
5   COLLEEN K. LYNCH
    Email: LynchCK@sec.gov
6   DAVID W. SNYDER
    Email: SnyderD@sec.gov
7   SECURITIES AND EXCHANGE
    COMMISSION
8   701 Market Street, Suite 2000
    Philadelphia, Pennsylvania 19106
9   Telephone: (215) 597-3100
    Facsimile: (215) 597-2740
10
    LOCAL COUNSEL:
11  David S. Brown, Cal. Bar No. 134569
    Email: BrownDAV@sec.gov
12  SECURITIES AND EXCHANGE
    COMMISSION
13  5670 Wilshire Boulevard, 11th Floor
    Los Angeles, California 90036
14
    Attorneys for Plaintiff
15  Securities and Exchange Commission

16              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
17                   **SOUTHERN DIVISION**

18  SECURITIES AND EXCHANGE           Case No. _____
    COMMISSION,
19
                 Plaintiff,
20
21          v.                        **ATTACHMENT TO CIVIL COVER**
                                      **SHEET**
22  DOUGLAS V. DECINCES, JOSEPH
    J. DONOHUE, FRED SCOTT
23  JACKSON, and ROGER A.
    WITTENBACH,
24
                 Defendants.
25

26

27

28

                                      1

Attorney for Douglas V. DeCinces:

Gordon A. Greenberg, Esq.
McDermott Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, Cal. 90067
(310) 551-9398

Attorney for Joseph J. Donohue:

H. Dean Steward, Esq.
H. Dean Steward, P.C.
107 Avenida Miramar, Ste. C
San Clemente, Cal. 92672
(949) 481-4900

Attorney for Fred Scott Jackson:

Thomas H. Bienert, Jr., Esq.
Bienert, Miller & Katzman, PLC
903 Calle Amanecer, Ste. 350
San Clemente, Cal. 92673
(949) 369-3700

Attorney for Roger A. Wittenbach:

Robert Pommer, III, Esq.
Kirkland & Ellis LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
(202) 879-5950

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1168 DOC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [_] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
David S. Brown, Cal. Bar No. 134569
Email: BrownDAV@sec.gov
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, Cal. 90036

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Securities and Exchange Commission | CASE NUMBER |
| PLAINTIFF(S) | **SACV11 - 1168 DOC (ANx)** |
| v. | |
| Douglas V. DeCinces, Joseph J. Donohue, Fred Scott Jackson, and Roger A. Wittenbach | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

    Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Michael J. Rinaldi, Esquire _____, whose address is 701 Market Street, Suite 2000, Philadelphia, Pa., 19106 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___AUG - 4___         By: _____
                                          **DODJIE LAGMAN**     SEAL
                                          Deputy Clerk

                                          *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*